**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lora Pope, an unmarried woman, ) | No. CV 17-394-TUC-LAB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Commissioner of Social Security ) Administration, ) | |
| Defendant. ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 14)

The court finds that the ALJ failed to "fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The case is remanded for further proceedings.

PROCEDURAL HISTORY

In January of 2014, Pope filed applications for disability insurance benefits and for supplemental security income pursuant to Title II and Title XVI of the Social Security Act respectively. (Tr. 180, 186) She alleged disability beginning on August 1, 2012, due to "fibromyalgia, diabetes, obesity, bad back and hips." (Tr. 180, 186, 202)

Her applications were denied initially and upon reconsideration. (Tr. 113-120); (Tr. 123-129) Pope requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Laura Speck Havens on June 8, 2016. (Tr. 43) In her decision, dated October 6, 2016, the ALJ found Pope was not disabled because there are jobs in the national economy that she can perform considering her age, education, work experience, and residual functional capacity. (Tr. 26-35)

Pope appealed and submitted additional records from her treating physician, "Sagir Bera, M.D." (Tr. 2) On June 3, 2014, the Appeals Council rejected the additional evidence and denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-6) Pope subsequently filed this action appealing that final decision. (Doc. 1)

Claimant's Work History and Medical History

Pope was born in September of 1968. (Tr. 33) She was 48 years old when ALJ Havens issued her decision in October of 2016. (Tr. 35)

Pope has a high school diploma. (Tr. 47) She worked as a bartender until August of 2014 when she was "let go" because she could no longer stand for longer that 15-20 minutes at a stretch. (Tr. 47-49) She did not apply for unemployment benefits. (Tr. 47-48)

*Physical Impairment*

In April of 2014, Martha A. Goodrich, M.D., reviewed the medical records for the disability determination service and offered an opinion of Pope's physical limitations. (Tr. 68) Goodrich opined that Pope could lift 10 pounds occasionally and 10 pounds frequently. (Tr. 71-74); (Tr. 80-83) She could stand and/or walk for 2 hours in an 8-hour day. *Id.* She could sit for more than 6 hours in an 8-hour day. *Id.* She should never crawl or climb ladders, ropes, or scaffolds. *Id.* She should only occasionally climb ramps or stairs, stoop, kneel, or crouch. *Id.* She should avoid concentrated exposure to environmental hazards such as fumes, odors, dusts, gases, or poor ventilation. *Id.* She should avoid even moderate exposure to hazards such as machinery or heights. *Id.*

In October of 2014, Marilyn Orenstein, M.D., reviewed the medical records for the disability determination service and offered an opinion of Pope's physical limitations. (Tr. 94-96); (Tr. 106-108) Orenstein agreed with the limitations previously provided by Goodrich. *Id.*

Also in October of 2014, Pope was examined by Jerome Rothbaum, M.D., for the disability determination services. (Tr. 336) Rothbaum diagnosed morbid obesity, asthma, nicotine abuse, alcohol abuse, myofascial low back pain, and hypertension. (Tr. 339) Rothbaum opined that none of these conditions would impose any limitations for 12 consecutive months. *Id.*

The record contains a Physical Residual Function Capacity Statement apparently from Pope's treating physician, Sagir Bera, D.O. (Tr. 322-323) Bera diagnosed Pope with diabetes, fibromyalgia, chronic pain syndrome, hyperlipidemia, obstructive sleep apnea, morbid obesity, and chronic back pain. (Tr. 322) He opined that Pope's pain is severe enough to constantly interfere with her attention and concentration. (Tr. 322) Bera estimated that Pope could sit for more than 3 hours at a time, and for about 6 hours in an 8-hour day. (Tr. 323) She could stand or walk for 10-15 minutes at one time. (Tr. 323) She would need to lie down or recline for about 3 hours during an 8-hour work day. (Tr. 323) She was "possibly" incapable of working. (Tr. 322)

In July of 2016, Pope was examined by Greg Hunter, M.D., for the disability determination services. (Tr. 358) He diagnosed Pope with morbid obesity, chronic pain disorder, diabetes, hypertension, and hypercholesterolemia. (Tr. 367) Hunter opined that Pope could lift and carry 20 pounds frequently and 50 pounds occasionally. (Tr. 362) She could sit, stand, or walk for 8 hours without interruption in an 8-hour day. (Tr. 362) She has no manipulative restrictions. (Tr. 363-364) She should only occasionally climb ladders or scaffolds or be exposed to unprotected heights. (Tr. 364-365)

*Hearing*

On June 8, 2016, Pope appeared with counsel at a hearing before ALJ Havens. (Tr. 43) She testified that she was born in September of 1968. (Tr. 47) She has a high school diploma.

(Tr. 47) She worked for many years as a bartender, but she was "let go" in August of 2014 because she could no longer stand for more than 20 minutes at a time. (Tr. 47) She did not file for unemployment benefits. (Tr. 47-48)

Pope testified that she has COPD, migraine headaches, diabetes, obesity, and fibromyalgia. (Tr. 48) She can dress herself, but someone must watch her bathe because she might fall. (Tr. 49) She can microwave food and tries to do household chores. (Tr. 49-50) She does not wash dishes, mop, sweep, or do laundry. (Tr. 50) She will "try to" do grocery shopping. (Tr. 50) For exercise, she walks to the mailbox and back. (Tr. 51) She takes lisinopril for high blood pressure, amlodipine for high blood pressure, flexeril for muscle spasms, and ibuprofen for pain. (Tr. 54, 205)

Pope testified that she can sit for up to an hour and a half. (Tr. 55) She can lift ten to 15 pounds. (Tr. 55) She has pain all the time in her lower back, feet and shoulders. (Tr. 55)

Susy Miranda testified as a vocational expert. (Tr. 57) Miranda testified that a person with the limitations described by Goodrich and Orenstein could work as a productions assembler, general office clerk, or information clerk. (Tr. 59)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Pope "has not engaged in substantial gainful activity since August 1, 2012, the alleged onset date. . . ." (Tr. 28) At step two, she found Pope "has the following severe impairments: obesity, fibromyalgia, diabetes, hypertension, sleep apnea and chronic obstructive pulmonary disease (COPD) . . . ." (Tr. 28)

At step three, the ALJ found Pope's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 30)

The ALJ then analyzed the claimant's residual functional capacity (RFC). She found "the claimant had the residual functional capacity to perform sedentary work . . . with the

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

following limitations: The claimant can lift/carry 10 pounds frequently or occasionally. The claimant can sit for 6 hours and stand/walk for 2 hours, all in an 8-hour workday. Claimant can never climb ladders/ropes/scaffolds or crawl and can occasionally climb ramps/stairs, balance, stoop, kneel or crouch. Claimant can have occasional exposure to heights, moving machinery, dust, fumes and smoke." (Tr. 30-31) The ALJ gave substantial weight to the opinions of the non-examining state agency medical consultants. (Tr. 33) The ALJ gave no weight to the statement apparently authored by Pope's treating physician, Bera. (Tr. 33)

At step four, the ALJ found Pope is unable to perform any past relevant work. (Tr. 33) At step five, the ALJ found, based on the testimony of the vocational expert, that, considering her age, education, work experience, and residual functional capacity, Pope can work as a production assembler, general office clerk, or information clerk. (Tr. 34)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her] or whether [she] would be hired if [she] applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

The Commissioner need not accept the claimant's subjective testimony of disability, but if she decides to reject it, she must justify her decision. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "[W]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.

"If an ALJ finds that a claimant's testimony relating to the intensity of [her] pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." *Valentine*, 574 F.3d at 693. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Id*. "In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner]." *Id.*

Discussion: Duty to Develop the Record

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (punctuation modified). "This duty extends to the represented as well as to the unrepresented claimant." *Tonapetyan*, 242 F.3d at 1150. The duty is heightened when the claimant is unrepresented or "may be mentally ill and thus unable to protect her own interests." *Id*. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id*. (punctuation modified) "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the

claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

The claimant here was represented by counsel and does not seem to have a psychological illness. On the other hand, the court notes that this case was resolved at step five of the disability analysis, at which point the burden of proof shifts from the claimant to the Commissioner. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir.2003).

In this case, Pope supported her disability claim by submitting a medical source statement apparently authored by her treating physician, Bera. (Tr. 322-323) Unfortunately, the statement is incomplete. *Id*. The statement indicates that it is four pages long, but only pages one and two appear in the record. *Id*. Pages three and four are missing. This error was recognized by the ALJ who evaluated Bera's statement as follows:

> The undersigned gives no weight to this statement for several reasons. The document is incomplete as it is a 4 page document, but only 2 pages were submitted. The document is unsigned thus it is unclear exactly who provided the information. Furthermore, a close examination of the treatment records indicate Dr. Bera treated the claimant only a handful of times, yet opined that the claimant was "possibly" incapable of working since about 4 years prior. . . . The undersigned finds that Dr. Bera's opinion is not consistent with the fairly benign examinations contained in her treatment records.

(Tr. 33)

The ALJ recognized that the statement was incomplete. (Tr. 33) This irregularity cast doubt on the provenance of the statement. *Id*. And this doubt made it difficult to determine the level of deference that should be accorded the document. *Id*. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians.").

The ALJ further recognized that the statement was ambiguous. (Tr. 33) The form asks the question, "Was your patient incapable of working after" the date that "your patient's impairments, symptoms and limitations [began]?" (Tr. 322) (punctuation modified) In response, the author of the statement checked the box, "possibly." *Id*. It is not clear why the author equivocated. Was the author unclear about the claimant's limitations, or was the author

unclear about what limitations are so profound as to preclude all employment? Perhaps the author believed that Pope became disabled at some point in time, but did not know when.

The ALJ recognized that this statement is "ambiguous" and that "the record is inadequate to allow for proper evaluation of the evidence." *See Tonapetyan*, 242 F.3d at 1150. Accordingly, the ALJ had a duty to fully and fairly develop the record by obtaining the missing information. The case will be remanded to allow the record to be supplemented and allow the ALJ an opportunity to reevaluate her decision.

The Commissioner argues that even if the record is ambiguous, remand is not required unless the missing evidence is material citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). (Doc. 18, p. 11) In *Mayes*, the court considered when sentence six of 42 U.S.C. § 405(g) requires remand for consideration of new evidence. *Id*. at 461-462. Here, the court remands, not under sentence six, but because the ALJ failed to fulfil her duty to fully and fairly develop the record. The Commissioner's argument as to materiality is therefore slightly off-topic.

The issue of materiality, however, is related to the concept of harmless error. The court recognizes that remand is not necessary if the ALJ's error was harmless. But "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm', Soc. Sec. Admin*., 454 F.3d 1050, 1056 (9th Cir. 2006).

Bera's statement, as the court noted above, is an opinion provided by a treating physician. Ordinarily the opinion of a treating physician is given controlling weight. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). On page 3, which the ALJ did not see, Bera stated that Pope has significant limitations with reaching, handling, or fingering. (Doc 17-1, p. 3) He stated that Pope could use her hands/fingers/arms effectively only 10% of the time. *Id*. This limitation, if accepted by an ALJ, could preclude Pope from performing the jobs identified by the vocational expert. They all seem to involve a considerable amount of hand work as do many sedentary jobs. *See Steiner-Leach v. Berryhill*, 2017 WL 969330, at *7 (D. Idaho 2017) ("[S]edentary work . . . often requires good use of both hands."). Accordingly,

the court cannot conclude that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). The court finds that the ALJ's failure to supplement the record was not harmless.

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for further administrative proceedings.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 2nd day of May, 2018.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge